HARRIS, Judge.
Irwin E. and Jacqueline Kott (Kott) offered to sell certain of their property in Orange County, Florida for $500,000. They listed through Area One, Inc. and agreed to pay a 10% commission for the sale of this property.
Central Florida Investments, Inc. (CFI) was interested in procuring the property and offered to pay $450,000. Kott rejected this offer. Not wanting to lose the sale, however, Area One agreed, in order to induce CFI to proceed to contract, to “assign” a portion of its commission to CFI thus having the effect of lowering the purchase price to $466,667. This was acceptable to CFI and a contract was presented to Kott which was accepted: $500,000 purchase price; ⅛ of commission payable to Area One and ⅜ of commission payable to CFI. The commission was to be paid out of the annual payments made on the purchase money mortgage.[1]
CFI had received $13,333 as “commission” by the time it defaulted by failing to make the January 15, 1987 payment. Kott *752 sued to foreclose the mortgage and to recover the commission paid because (1) CFI was not a licensed real estate broker at the time the contract was executed and (2) CFI had forfeited the commission by defaulting under the contract.
CFI subsequently paid all amounts owing under the contract and received a satisfaction of mortgage. The action then continued on Kott’s claim to recover the commission paid and CFI’s counterclaim to recover the additional commission due.
The trial court entered summary judgment in favor of Kott. We reverse.
UNLICENSED REAL ESTATE BROKER
CFI was not a licensed real estate broker at the time of this transaction. It had previously been licensed and at the time of the transaction its sole officers, directors and shareholders, David and Bettie Siegel, were so licensed.
Kott urges that section 475.01(3), Florida Statutes precludes entitlement to a commission. That would be true, of course, if CFI were acting as a “broker” in this transaction. We find that it was not.
The legislative purpose for regulating the real estate industry is “to protect the public from potential economic loss.”[2] The entire regulatory scheme is directed at persons who represent others for a commission or who hold themselves out as being in the business of dealing in property of others.[3] The supreme court held in Florida Real Estate Commission v. McGregor, 336 So.2d 1156, 1160 (Fla.1976):
It is apparent that the legislature recognized that an individual has the constitutional right to deal with his own property without the intervention of a licensed real estate broker or salesman and that the exception with respect to partnerships and corporations were inserted in the statute to place those business organizations on the same parity with natural persons who own real estate.
CFI had the right to buy property without regard to the provisions of chapter 475. CFI negotiated with the realtor involved to reduce the purchase price to an acceptable level by sharing the commission. Two facts remove this situation from the strictures of chapter 475. First, CFI was acting for itself and not “for another;” and second, the “commission” was clearly a price-reducing mechanism and not consideration for “any act or service enumerated in Section 475.01(3).”[4]
The fact that the conditional repayment to CFI of a portion of the purchase price was called a commission in the contract does not make CFI a “broker” receiving “compensation ... directly or indirectly paid” for dealing in property “for another” (§ 475.01(l)(c)) nor does it make this return of a portion of the purchase price a commission prohibited under the provisions of chapter 475. CFI performed no brokerage service for which it could claim a true commission. This is not the type of transaction covered or contemplated by chapter 475.
We recognize apparent conflict with Ganot Corp. v. J.M.G. Const. Corp., 560 So.2d 804 (Fla. 4th DCA 1990). Although the facts are not detailed in Ganot it appears that the court upheld the denial of a “commission” factored in as a portion of the sale price of developed lots. It appears from the opinion that Ganot sold lots to a house builder for a certain initial sale price plus a percentage of the end sale of the lot after a house was constructed on it. This deferred payment was referred to as a “commission.” There is no indication that Ganot performed any brokerage services or implied that it had. This appears to have been a device to insure a minimum purchase price while deferring additional compensation until the lots were resold in order to induce or permit the house builder to acquire lots for less initial capital outlay. *753 Although the additional payment was made from the proceeds of the second closing, it was consideration totally for the original purchase. This was a contractual arrangement beneficial to both parties and evinced no real estate fraud contemplated by chapter 475. By applying chapter 475, the court has, in effect, reduced the buyer’s purchase price and denied the seller the full benefit of its bargain. It appears that no evil or fraud was thwarted by refusing to enforce the parties agreed to, innovative deferred purchase arrangement.
In Ganot it was not deferred compensation that was disapproved. In the case at bar it is not the reduction of purchase price that is challenged. In both cases it is the fact that the method used to bring about the agreed result referred to “commission.” The results in each case, however, could have been structured differently so as to not use the word “commission” at all. In Ganot the parties could have used a note payable upon resale of the property; in the case at bar the parties could have provided that the commission be paid to the principal of CFI who were licensed brokers. The fact that there are alternative methods of achieving the legal goals of deferred payment of purchase price or reduction of purchase price is important. As the Supreme Court stated in McGregor:
In addition, under the Commission’s construction of the statute, Mid State submits that it clearly could form subsidiary corporations or limited partnerships, with one officer in each corporation or all partners able to sell land without being registered. The recitation of these legitimate alternative means of accomplishing acts considered by the Commission to be illegitimate demonstrates the tenuous position in which the appellant is placed in contending that the exception in the statute, as applied to appellees, protects the interests of the public.
336 So.2d at 1160.
The purpose of chapter 475 is to prevent persons, brokers or nonbrokers, from fraudulently or improperly dealing with property of others. It is not the purpose to prevent persons dealing for themselves to reduce the purchase price or to permit deferred payment of the purchase price even though they use the word “commission” in their arrangement.
BREACH OF CONTRACT
As an alternative grounds to recover the commission paid, Kott claims that CFI breached its contract by failing to timely make the final payment. Kott relies on that portion of the contract that provides:
APPLICATION OF DEPOSIT ON DEFAULT: In the event buyer fails to perform and the deposit aforesaid is retained, the amount of the deposit shall be paid ¾⅛ to Area One, Inc. and ⅛ to sellers. If the transaction shall not be closed because of the failure of the seller to perform, then seller shall pay the commission to Area One, Inc. as stated above. In the event of default by either seller or buyer, no commission shall be paid to Central Florida Investments, Inc.
First, the provision applies only to the deposit made pursuant to the contract. Since the contract did close, the provision becomes moot.
Second, even if the last sentence is considered a general contract provision, upon full payment and acceptance of the contract amount any default was cured. The significance of this provision, however, is that it shows that the “commission” was intended as a conditional contract price reduction and not an earned real estate commission based on procuring the sale of the property. Otherwise CFI would have been treated the same as Area One, Inc.
Kott is attempting to use chapter 475 not only as a shield to protect against a legitimate contractual obligation to return a portion of the purchase price but also as a sword to recover that which has been paid. Chapter 475 does not require this unjust enrichment.
The judgment is REVERSED and the cause is REMANDED to award CFI the balance of its purchase price refund.
*754 W. SHARP, J., concurs.
DIAMANTES, J., concurs specially with opinion.

. Although the initial contract was entered into in 1981, the applicable statutes have not materially changed and reference will be to the current statute.

. § 475.001, Fla.Stat. (1989).

. § 475.01(l)(c), Fla.Stat. (1989). Here it is evident that CFI was acting only in its own interest.

.§ 475.41, Fla.Stat. (1989).